The defendant was convicted by a jury of negligent homicide with a motor vehicle in violation of General Statutes 53a-58a.[1] In this appeal the only issue raised is the admissibility of evidence relating to a blood sample of the defendant which was taken at the hospital where she was being treated after the accident. *Page 512 
The briefs indicate no disagreement concerning the essential facts, which are as follows: On January 24, 1976, at about 1:40 a.m. the defendant was driving at about thirty miles per hour on Ocean Avenue, New London, when her car skidded upon an icy portion of the road and slid to the other side where it struck an oncoming car. The collision resulted in the death of a passenger in the defendant's car. There was evidence that the posted speed limit on Ocean Avenue was twenty-five miles per hour.
The defendant was taken to the hospital by a police officer. After it was learned that the victim had died, the defendant was given the standard Miranda warning and was then questioned. She stated that she, the victim, and another passenger had been drinking at a restaurant from about 8:30 p.m. until a short time before the accident. She admitted that she had had five drinks of peppermint schnapps and that she had been traveling at about thirty miles per hour. She was placed under arrest. At 4:06 a.m. the medical examiner took a blood sample from the defendant as she was lying in a bed in the hospital emergency room in the presence of two police officers.
At the trial the defendant objected to evidence of the results of the blood test upon the ground that the requirements of General Statutes 14-227a
(b) for the admissibility of blood test results had not been met and also upon the ground of "her constitutional right not to have the blood taken from her." The objection was overruled and the evidence was admitted.[2] *Page 513 
The claim of the defendant that the failure to meet the requirements of 14-227a (b)[3]
rendered the blood test results inadmissible is wholly unsound in view of the introductory clause, which reads "[i]n any criminal prosecution for a violation of subsection (a) of this section. . . ." It is as clear as words can make it that the requirements of subsection (b) pertain only to prosecutions for the operation of a motor vehicle while under the influence of intoxicating liquor or drugs in violation of 14-227a (a).[4] *Page 514 
The defendant's elaborate argument that the law should be otherwise should more appropriately be addressed to the legislature.
It is also argued that the juxtaposition of General Statutes 14-227c, which authorizes the medical examiner to obtain a blood or breath sample from any surviving operator of a motor vehicle involved in a fatal accident, to 14-227a
indicates a legislative intention that tests taken by the medical examiner under such authority must conform to the requirements of 14-227a. We reject this construction in view of the broad authority conferred upon the medical examiner by 14-227c, which empowers him to take blood or breath samples in such cases "[t]o the extent provided by law."
At the trial the only constitutional argument raised by the defendant was, in the words of her counsel, "the standard objection that one would assert in the taking of blood from [the defendant's] body to be used in a trial against her without her consent and without the voluntariness of it." In this appeal the defendant recognizes that Schmerber v. California, 384 U.S. 757, authorizes the taking of a blood sample from a motor vehicle operator against his will under the proper conditions. She relies now wholly[5] upon the principle, as enunciated in Schmerber, pp. 769-70, that "[t]he interests in human dignity and privacy which the Fourth Amendment protects forbid any such intrusions on the mere chance that desired evidence might be obtained. In the absence of a clear indication that in fact such evidence will be found, these fundamental human interests require law officers to suffer *Page 515 
the risk that such evidence may disappear unless there is an immediate search." She claims that the circumstances do not warrant a conclusion that there was a "clear indication" that pertinent evidence would be found by taking a sample of her blood.
We think the record amply demonstrates that there was not only probable cause to arrest the defendant upon the charge of negligent homicide with a motor vehicle but also a "clear indication" that a blood sample would probably produce evidence highly pertinent to that charge. The admission of the defendant that she had consumed five drinks of an alcoholic beverage in the course of the evening was sufficient to indicate that even two hours after the accident her blood stream would contain some quantity of alcohol, measurement of which would be useful in determining the extent to which her driving ability was affected. Gulia v. Ortowski,156 Conn. 40, 49. Although no other observations were made to indicate that alcohol was involved in the accident, even a slight degree of impairment of the defendant's faculties would be of some significance in determining whether she had been negligent. Ibid. We are presented not with a situation where the blood sample was ordered upon the mere chance that relevant evidence might be obtained, but with one where there was a sufficient basis in the admission of the defendant for the belief that a blood sample would produce such evidence.
The decision in this case is limited to the record before us, which does not include all of the testimony at the trial. The only constitutional basis under Schmerber v. California, supra, 769-70, for taking a sample of the defendant's blood was the "clear indication," provided by the defendant's admission to the consumption of an alcoholic beverage, that a measurable quantity of alcohol would be detected in her blood if a sample were taken. That admission *Page 516 
was made to the police officers. The blood sample was taken by the medical examiner in the presence of the officers. At the trial the defendant waived her right to have the medical examiner testify and at no time has she raised the question of whether the medical examiner was requested by the officers to take the sample or whether the defendant's admission was communicated to him. Under General Statutes 14-227c the chief medical examiner, an authorized assistant medical examiner, or a coroner is authorized to order the taking of a blood sample from the operator of a motor vehicle which is involved in an accident which results in a fatality. Had the medical examiner in this case acted under this statute without the benefit of any pertinent communication from or request by the police we might be faced with a constitutional problem of a different dimension. Smith v. United States, 358 F.2d 833, 835 (D.C. Cir.). We have no occasion to consider that problem in view of the incomplete record before us and the failure of the defendant to raise that question either at the trial or on this appeal.
 There is no error.
In this opinion A. HEALEY and PARSKEY, Js., concurred.