STATE of Iowa, Appellant,

v.

**Roger Merrill HITCHENS, Appellee.**

No. 63969.

Supreme Court of Iowa.

July 16, 1980.

Thomas J. Miller, Atty. Gen., Richard L. Richards, Asst. Atty. Gen., and Theodore J. Hovda, Hancock County Atty., for appellant.

William Pappas, Mason City, for appellee.

Considered by REES, P. J., and UHLENHOPP, HARRIS, McCORMICK, and ALLBEE, JJ.

UHLENHOPP, Justice.

The single issue we must consider in this case is whether, in an involuntary manslaughter prosecution, the State may introduce the results of a blood test taken under warrant after the defendant refused police requests to submit to such a test.

The facts relevant to our determination are few. Defendant Roger Merrill Hitchens was involved in a two-vehicle traffic collision which was fatal to the other driver. Investigating officers at the scene became suspicious about Hitchen's state of sobriety and placed him under arrest for operating a motor vehicle while under the influence of an alcoholic beverage. *See* § 321.281, The Code 1979. Hitchens refused police requests to submit to chemical tests under chapter 321B of the Code, whereupon the

officers obtained a search warrant and had a blood sample taken from Hitchens. The county attorney subsequently filed an information charging Hitchens with involuntary manslaughter. See § 707.5. At a pretrial conference the district court ruled that the results of the test would not be admissible at trial. We granted the State's application for discretionary review to determine the propriety of the ruling.

Our standard of review is on error. See *Ravreby v. United Airlines, Inc.*, 293 N.W.2d 260, 262 (Iowa 1980); Iowa R.App.P. 4, 203. The question presented, however, is essentially one of law, which we may consider. *Mosebach v. Blythe*, 282 N.W.2d 755, 759 (Iowa 1979).

No constitutional issues are involved. The United States Supreme Court has held that the admission of involuntarily administered blood tests is not violative of the fifth amendment privilege against self-incrimination. *Schmerber v. California*, 384 U.S. 757, 761, 86 S.Ct. 1826, 1833, 16 L.Ed.2d 908, 916–17 (1966). Although the taking of a blood test has been found to constitute a search, *id.* at 767, 86 S.Ct. at 1834, 16 L.Ed.2d at 918, blood samples taken pursuant to a valid warrant meet the reasonableness requirement of the fourth amendment. *Id.* at 770, 86 S.Ct. at 1835, 16 L.Ed.2d at 919. The blood test at issue here was taken pursuant to warrant, and the validity of the warrant is not challenged. We thus move on to the more difficult issue of whether our implied consent statute prohibits the procedure employed by police in obtaining the blood test.

Iowa's implied consent statute is codified in chapter 321B. The general purpose of the statute is "to reduce the holocaust on our highways part of which is due to the driver who imbibes too freely of intoxicating liquor." *Severson v. Sueppel*, 152 N.W.2d 281, 284 (Iowa 1967). See § 321B.1. To that end, the statute establishes the basic principle that a driver impliedly agrees to submit to a test in return for the privilege of using the public highways. *State v. Jensen*, 216 N.W.2d 369, 373 (Iowa 1974). If the driver withdraws that consent by refusing an appropriate request by an officer to take a test, the statute allows the state to withdraw the driver's privilege of using our public highways. § 321B.7. This court has carefully defined the procedure to be followed in applying chapter 321B. *Jensen*, 216 N.W.2d at 372.

An issue we have not yet considered is whether chapter 321B prohibits the taking of a blood sample on probable cause or under warrant, after the driver has refused police requests to submit to chemical testing for intoxication. The argument that chapter 321B imposes such a prohibition is based on the provision in section 321B.7 of the Code that "[i]f a person under arrest refuses to submit to the chemical testing, *no test shall be given* . . . ." (Emphasis added.) The district court concluded that this language prohibits the police from obtaining blood samples from Hitchens "outside the statute"—*i. e.*, through a warrant—once Hitchens refused the police officer's request to submit to a test.

When we have been asked in the past to construe provisions of chapter 321B, the following considerations have guided us:

> "In interpreting a statute we look to the object to be accomplished, the evils sought to be remedied, or the purpose to be subserved and place on it a reasonable or liberal construction which will best serve its purpose rather than one which will defeat it. . . . A statute should be given a sensible, practical, workable and logical construction and if fairly possible a construction resulting in unreasonableness as well as absurd consequences will be avoided."

*Schmoldt v. Stokes*, 275 N.W.2d 209, 210 (Iowa 1979), *quoting Krueger v. Fulton*, 169 N.W.2d 875, 877–78 (Iowa 1969).

After examining the reasoning in the case law of other jurisdictions which have addressed the issue, we arrive at the same conclusion as reached by the majority of those courts—that the language quoted from section 321B.7 prohibits the taking of a blood sample after the driver has refused police requests to submit to testing. *See, e. g., Hill v. State*, 366 So.2d 296, 322 n. 4

(Ala.Crim.App.1978) ("The person cannot be compelled to submit to a test against his will . . . .") (dictum); *Anchorage v. Geber*, 592 P.2d 1187, 1192 (Alaska 1979); *Campbell v. Superior Court*, 106 Ariz. 542, 549, 479 P.2d 685, 692 (1971) (driver has "physical power" to refuse to submit to the test); *State v. Riggins*, 348 So.2d 1209, 1211 (Fla.App.1977); *Longino v. Cofer*, 148 Ga. App. 341, 343, 251 S.E.2d 113, 114 (1978); *Rossell v. City & County of Honolulu*, 59 Hawaii 173, 182, 579 P.2d 663, 669 (1978) ("[I]t is essential that the police refrain from imposing the chemical tests when the arrested driver refuses to submit to such tests."); *People v. Todd*, 59 Ill.2d 534, 543, 322 N.E.2d 447, 454 (1975); *State v. Bellino*, 390 A.2d 1014, 1023 (Maine 1978); *State v. Wilson*, 92 N.M. 54, 56, 582 P.2d 826, 828 (1978); *People v. Stratton*, 286 App.Div. 323, 326, 143 N.Y.S.2d 362, 365 (1955), *aff'd*, 1 N.Y.2d 664, 133 N.E.2d 516, 150 N.Y.S.2d 29 (1956); *Bailey v. City of Tulsa*, 491 P.2d 316, 318 (Okl.Cr.App.1971); *State v. Annen*, 12 Or.App. 203, 206, 504 P.2d 1400, 1401 (1973) ("[I]t is apparent that in some instances drivers have a statutory right under the Implied Consent Law to refuse to submit to any and all chemical sobriety tests."); *Commonwealth v. Wolpert*, 224 Pa.Super. 361, 370, 308 A.2d 120, 125 (1973). *Cf.* Comment, 1977 Det.C.L.Rev. 635, 670–71 n. 147 (When test is not secured in compliance with the implied consent law in a setting that the admissibility provision of the statute describes, it will "seldom, if ever, be admissible.").

Two basic arguments support these decisions. First, the plain language of chapter 321B requires that police respect a driver's refusal to take a test; the section states that if the driver "refuses to submit to the chemical testing, no test shall be given." No qualifying language appears with those words, such as "unless a warrant is obtained."

A second consideration relates to one of the apparent purposes of the implied consent law: to avoid physical confrontations between the police and motor vehicle drivers. *See Campbell*, 479 P.2d at 692; *Bush v. Bright*, 264 Cal.App.2d 788, 790, 71 Cal. Rptr. 123, 124 (1968); *Rossell*, 59 Hawaii at 181–82, 579 P.2d at 669; *People v. Paddock*, 29 N.Y.2d 504, 506, 272 N.E.2d 486, 487 (1971) (Jasen, J., concurring). To achieve that end a trade-off was necessary. On the one hand the state recognizes a driver's "right" to refuse testing, but on the other hand it extracts a penalty for exercising the right—revocation of the driver's license. By striking this balance, the statute motivates drivers to take the test, but does so without resorting to physical compulsion. Loss of driving privileges appears to be the sanction the General Assembly selected for refusing a test. In addition, section 321B.11 permits the driver's refusal to take a test to be shown in evidence.

We have not ignored the case law of jurisdictions which arguably supports the construction of chapter 321B urged by the State. The Wisconsin Supreme Court ruled that its implied consent law "does not limit the right to take a blood sample," stating "[i]t is not our understanding . . . that the implied consent law was intended to give greater rights to an alleged drunken driver than were constitutionally afforded theretofore." *Scales v. State*, 64 Wis.2d 485, 493–94, 219 N.W.2d 286, 292 (1974). This argument seems to ignore the total effect of the statute: the statute does not simply expand the rights of an allegedly drunken driver, it also extracts a price from the driver for recognizing the power to refuse testing. The Arkansas Supreme Court admitted into evidence the results of a blood test taken by a doctor neither at the request nor direction of an officer on the ground that the protections of its implied consent statute were inapplicable. *Turner v. State*, 258 Ark. 425, 437, 527 S.W.2d 580, 587–88 (1975). Without commenting on the merits of *Turner, see id.*, 258 Ark. at 441, 527 S.W.2d at 590 (Harris, C. J., dissenting), we believe the case to be distinguishable on its facts. The blood test here was taken *at the direction* of a police officer *after* Hitchens had denied the officer's request to submit to sobriety tests. Unquestionably the present case falls within the operation of chapter 321B.

We also note several cases holding that tests taken without compliance with implied consent statutes are nevertheless admissible in criminal negligence actions. *See, e. g., People v. Sanchez,* 476 P.2d 980, 982 (Colo. 1970); *State v. Robarge,* 35 Conn.Supp. 511, ——, 391 A.2d 184, 185 (1977); *People v. Cords,* 75 Mich.App. 415, 421, 254 N.W.2d 911, 914 (1977); *State v. Chastain,* 594 P.2d 458, 463 (Wyo.1979). At the time of those cases, however, the implied consent statutes there contained admissibility provisions limiting application to "driving while under the influence" cases. *See* Conn.Gen.Stat. §§ 14–227a(a)–(b) (1970); Colo.Rev.Stat. § 13–5–30 (1963); Mich.Comp.Laws § 257.-625a (1977); Wyo.Stat. § 31–6–102 (1977). Our implied consent statute, in contrast, contains a broad admissibility provision: "it applies to any civil or criminal action or proceeding arising out of the acts alleged to have been committed by any person while operating a motor vehicle upon a public highway of this state while under the influence of an alcoholic beverage . . . ." § 321B.10.

We conclude that the district court was correct in excluding the results of the blood test taken after Hitchens had refused the officer's request for a test.

AFFIRMED AND REMANDED.