The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
January 7, 2021

## 2021COA1

**No. 17CA1896, *People v. Raider* — Regulation of Vehicles and Traffic — Alcohol and Drug Offenses — Expressed Consent for the Taking of Blood, Breath, Urine, or Saliva**

A division of the court of appeals considers an issue of first impression under the Expressed Consent Statute, § 42-4-1301.1, C.R.S. 2020. Under this statute, anyone who drives a motor vehicle in the state is deemed to have consented to take a blood or breath test when requested by a law enforcement officer having probable cause to believe the driver is under the influence of alcohol, drugs, or both. The driver may refuse to take such a test, but is subject to penalties for that refusal. Even if a driver refuses testing, however, a law enforcement officer may require the driver to submit to a blood test if the officer has probable cause to believe the driver has

committed criminally negligent homicide, vehicular homicide, assault in the third degree, or vehicular assault.

The division determines, as a matter of first impression, that if a driver refuses testing and an officer lacks probable cause that the driver has committed one of the four enumerated offenses, the officer may not require the driver to submit to testing by obtaining a search warrant. The division therefore determines that the forced test of the defendant, pursuant to a warrant but without probable cause that the defendant had committed one of the enumerated offenses, was illegal. The division also determines that the appropriate remedy for the illegal forced test is suppression of the test results and remands for a new trial.

COLORADO COURT OF APPEALS                                    **2021COA1**

Court of Appeals No. 17CA1896
Larimer County District Court No. 17CR1044
Honorable Gregory M. Lammons, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Charles Raider, Jr.,

Defendant-Appellant.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE GOMEZ
Román and Fox, JJ., concur

Announced January 7, 2021

Philip J. Weiser, Attorney General, Brian M. Lanni, Assistant Attorney General,
Denver, Colorado, for Plaintiff-Appellee

Laura E. H. Harvell, Alternate Defense Counsel, Grand Junction, Colorado, for
Defendant-Appellant

¶ 1     Anyone who drives a motor vehicle in Colorado is deemed to have consented to the provisions of the Expressed Consent Statute. § 42-4-1301.1(1), C.R.S. 2020.  Those provisions include consent to take a blood or breath test when requested by a law enforcement officer having probable cause to believe the driver is under the influence of alcohol, drugs, or both.  § 42-4-1301.1(2)(a)(I), (b)(I). If the driver refuses such testing, that refusal is admissible into evidence at a trial for driving under the influence (DUI) or driving while ability impaired (DWAI).  § 42-4-1301(6)(d), C.R.S. 2020. A driver's refusal will also result in revocation of his or her driver's license for at least a year — and longer for successive instances of refusal.  § 42-2-126(2)(h), (3)(c)(I), (4)(b)(I), C.R.S. 2020.

¶ 2     But the Expressed Consent Statute permits a law enforcement officer to force a driver to take a blood test, notwithstanding the driver's refusal, if the officer has probable cause to believe the driver has committed one of four listed offenses.  The statute provides that

> *[n]o law enforcement officer shall physically restrain any person for the purpose of obtaining a specimen of such person's blood*, breath, saliva, or urine for testing *except when the officer has probable cause to believe that the person has committed criminally negligent homicide* pursuant to section 18-3-105, C.R.S.,

1

> *vehicular homicide* pursuant to section
> 18-3-106(1)(b), C.R.S., *assault in the third*
> *degree* pursuant to section 18-3-204, C.R.S.,
> *or vehicular assault* pursuant to section
> 18-3-205(1)(b), C.R.S., and the person is
> refusing to take or to complete, or to cooperate
> in the completing of, any test or tests, *then, in*
> *such event, the law enforcement officer may*
> *require a blood test.*

§ 42-4-1301.1(3) (emphases added).  Evidence acquired through such a forced blood test is admissible in a prosecution for any of the four listed offenses or for DUI, DUI per se, DWAI, or underage drinking and driving.  § 42-4-1301(6)(e).

¶ 3    This case presents an issue of first impression under these provisions: whether the Expressed Consent Statute provides the exclusive list of circumstances under which officers may obtain forced blood draws of DUI or DWAI suspects, or whether officers may obtain forced blood draws in other circumstances so long as they secure a warrant.  Defendant, Charles Raider, Jr., contends that the statute permits officers to require testing of DUI or DWAI suspects in only four specified circumstances, and obtaining a warrant is not one of those circumstances.  The People, conversely, contend that the statute provides for searches under the consent exception to the Fourth Amendment's warrant requirement and,

2

thus, that the statute's limitations do not apply when an officer has secured a warrant authorizing a test.

¶ 4    We conclude that under the plain language of the Expressed Consent Statute, law enforcement officers may not force a driver suspected of DUI or DWAI to take a blood test except in the four specified circumstances — that is, when the officer has probable cause to believe the driver has committed criminally negligent homicide, vehicular homicide, third degree assault, or vehicular assault — even if the officers obtain a warrant authorizing the test. We also conclude that the trial court erred by admitting evidence of the results of Raider's illegal forced blood test at his trial for DUI and obstructing a peace officer and that the error was not harmless. Accordingly, we reverse the judgment of conviction and remand for a new trial on both charges.

## I.    Background

¶ 5    Officer Jason Lang of the Fort Collins Police Department responded to a call one evening about an unauthorized car in a handicapped parking space.  When he approached the car, Raider was sitting in the driver's seat with the keys in the ignition and the engine running.  Upon interacting with Raider, Officer Lang noticed

3

that his eyes were bloodshot and watery, his speech was slurred, and his breath smelled of alcohol.  Raider produced an expired handicapped placard, explained that he had come to pick up a friend, and, when questioned, denied having consumed any alcohol or taken any drugs.  Officer Lang asked Raider to perform some roadside maneuvers, but he declined.

¶ 6    Officer Lang advised Raider that he was under arrest for DUI. Both Officer Lang and a second officer to arrive at the scene, Officer Kenneth Koski, advised Raider about the Expressed Consent Statute.  Raider initially didn't provide a definitive response, but ultimately he refused any testing.

¶ 7    After learning that Raider had several prior DUI convictions, Officer Koski applied for a search warrant to conduct a blood draw.[1] Meanwhile, Officer Lang transported Raider to the hospital.  After about an hour, the officers received a signed warrant authorizing them to draw a sample of Raider's blood for testing and to use

---

[1] The form Officer Koski used in seeking a warrant contains check boxes that partially track the Expressed Consent Statute (indicating a blood sample would be material evidence in prosecuting a charge of vehicular assault or vehicular homicide) but that also include felony DUI (indicating a blood sample would be material evidence in prosecuting a DUI offense with three or more prior convictions).

reasonable and necessary force to obtain it. Because Raider refused to cooperate with the blood draw, hospital personnel put him in four-point leather restraints and several officers held him down while a technician drew his blood. Testing revealed that his blood had an alcohol content of .188 and contained the active components of marijuana.

¶ 8      The prosecution charged Raider with felony DUI (three or more prior convictions) and obstructing a peace officer. Before trial, Raider sought to suppress evidence from the forced blood draw. The trial court denied the request, concluding that the Expressed Consent Statute doesn't apply where, as here, a blood draw is authorized by a warrant. After a trial at which the prosecution presented evidence of Raider's blood test results and refusal to cooperate with the blood draw, the jury found Raider guilty of both charges. The court found Raider had five prior DUI convictions, making his conviction a felony, and sentenced him accordingly.[2]

---

[2] Raider doesn't challenge the trial court's resolution of the issue of his prior convictions. *See Linnebur v. People*, 2020 CO 79M. At any rate, our disposition of his appeal renders that issue moot.

## II.     Analysis

¶ 9      We first consider Raider's argument that the forced blood draw violated the Expressed Consent Statute.  Because we conclude that it did, we also consider what is the appropriate remedy for the violation (we conclude that the test results must be suppressed) and whether the erroneous admission of the test results requires reversal of Raider's convictions (we conclude that it does).

### A.     Standard of Review

¶ 10     Our review of the trial court's ruling on suppression issues presents a mixed question of law and fact.  *People v. Simpson*, 2017 CO 25, ¶ 12.  We defer to the trial court's findings of fact if they are supported by the record, but we assess the legal effect of those facts de novo.  *Id.*  We also review de novo the trial court's interpretation of the Expressed Consent Statute.  *See People v. Smith*, 254 P.3d 1158, 1161 (Colo. 2011).

¶ 11     We consider whether preserved nonconstitutional errors require reversal under the harmless error standard.  *Hagos v. People*, 2012 CO 63, ¶ 12; *see also* Crim. P. 52(a).  Under this standard, we reverse only if an error affects the parties' substantial rights — that is, if it "substantially influenced the verdict or affected

6

the fairness of the trial proceedings." *Hagos*, ¶ 12 (quoting *Tevlin v. People*, 715 P.2d 338, 342 (Colo. 1986)).

### B.    The Expressed Consent Statute

¶ 12    We first consider whether the Expressed Consent Statute provides the exclusive list of circumstances under which officers may obtain forced blood draws of DUI or DWAI suspects, or whether officers may obtain forced blood draws in other circumstances so long as they secure a warrant.

¶ 13    In construing a statute, our primary purpose is to ascertain and give effect to the General Assembly's intent. *McCoy v. People*, 2019 CO 44, ¶ 37. To do so, we focus primarily on the language of the statute, recognizing that "'a court should always turn first' to the plain meaning rule 'before all other[ ]' rules because 'courts must presume that a legislature says in a statute what it means and means in a statute what it says there.'" *Cowen v. People*, 2018 CO 96, ¶ 12 (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992)). Thus, we give statutory words and phrases their plain and ordinary meanings, read those words and phrases in context, and construe them according to the rules of grammar and common usage. *McCoy*, ¶ 37. We also endeavor to effectuate the

7

purpose of the legislative scheme, reading that scheme as a whole, giving consistent effect to all of its parts, and avoiding constructions that would render any words or phrases superfluous or lead to illogical or absurd results.  *Id.* at ¶ 38.

¶ 14     If the statutory language is unambiguous, we effectuate its plain meaning and look no further.  *Carrera v. People*, 2019 CO 83, ¶ 18.  But if the language is ambiguous, in that it is susceptible of multiple reasonable interpretations, we may consider other tools of statutory construction.  *Id.*

¶ 15     The parties agree that the Expressed Consent Statute does not refer to warrants.  But "[a] statute's silence on an issue does not necessarily mean that the statute is ambiguous."  *Hansen v. Barron's Oilfield Serv., Inc.*, 2018 COA 132, ¶ 10; *see also In re 2000-2001 Dist. Grand Jury*, 97 P.3d 921, 924-25 (Colo. 2004) (statutory silence on an issue didn't create an ambiguity).  In fact, it may be prudent to refrain from finding ambiguity in silence, as "a statute's silence on a particular issue easily could be used to manufacture ambiguity where none exists in practically any case involving statutory construction."  *Robbins v. People*, 107 P.3d 384, 393 (Colo. 2005) (Rice, J., dissenting).

¶ 16    Applying these principles, we conclude that the Expressed Consent Statute unambiguously prohibits forced testing of DUI or DWAI suspects in any circumstances other than those listed in the statute. This means that, even if officers obtain a warrant, if they lack probable cause to believe a driver suspected of DUI or DWAI has committed one of the four listed offenses (criminally negligent homicide, vehicular homicide, third degree assault, or vehicular assault), they cannot force a blood draw.

¶ 17    The plain language of the statute — which provides that "[n]o law enforcement officer shall physically restrain any person" for the purpose of obtaining a specimen for testing "except" in four specific circumstances — supports this interpretation. § 42-4-1301.1(3). This language is clear and unequivocal. The use of the term "except" followed by four specific exceptions indicates that the only circumstances in which officers may force testing of DUI or DWAI suspects are those listed in the statute. *See Cain v. People*, 2014 CO 49, ¶ 13 (interpreting "the General Assembly's inclusion of a single, specific, narrow exception to mean that the General Assembly intended that there be no other exceptions to the rule" generally set forth); *Riley v. People*, 104 P.3d 218, 221 (Colo. 2004)

9

("The presence of one exception is generally construed as excluding other exceptions.").

¶ 18 If the General Assembly had intended to also except searches conducted pursuant to a warrant, it could have expressly said so. Indeed, in another statute, the General Assembly did just that: in a statute governing the blood testing of assault suspects to check for communicable diseases, one subsection allows law enforcement officers to ask a suspect to voluntarily consent to testing, while another allows officers to seek a warrant requiring testing under certain circumstances if the suspect refuses to consent to it. § 16-3-303.8(2), (3)(a), C.R.S. 2020.

¶ 19 Additionally, several other states have included provisions in their expressed or implied consent statutes explicitly excepting or authorizing searches conducted pursuant to a warrant. *See, e.g.,* Ariz. Rev. Stat. Ann. § 28-1321(D)(1) (2020) ("If a person . . . refuses to submit to the test designated by the law enforcement agency . . . [t]he test shall not be given, except as provided [by statute] or pursuant to a search warrant."); Wash. Rev. Code Ann. § 46.20.308(4) (West 2020) ("Nothing in [the statute] precludes a law enforcement officer from obtaining a person's blood to test for

alcohol, marijuana, or any drug, pursuant to a search warrant . . . ."); Wyo. Stat. Ann. § 31-6-102(d) (West 2020) ("If a person under arrest refuses upon the request of a peace officer to submit to a chemical test . . . , none shall be given except in cases where serious bodily injury or death has resulted or upon issuance of a search warrant.").

¶ 20    Had the General Assembly intended a similar result here, it could have included similar language.  But it did not.  This suggests that warrants do not provide an additional exception under the Expressed Consent Statute.  *See, e.g.*, *State v. Hitchens*, 294 N.W.2d 686, 688 (Iowa 1980) (concluding that a warrant couldn't be used to circumvent Iowa's implied consent statute as the legislature hadn't included any "qualifying language" to that effect); *State v. Beyor*, 641 A.2d 344, 345 (Vt. 1993) (applying similar reasoning to reach the same conclusion under Vermont's implied consent statute).

¶ 21    By allowing forced testing where there is probable cause to believe a driver suspected of DUI or DWAI has committed criminally negligent homicide, vehicular homicide, third degree assault, or vehicular assault, but not in any other circumstances, the

11

Expressed Consent Statute reflects a legislative balance between competing concerns.

¶ 22     On the one hand, Colorado's Expressed Consent Statute, in conjunction with the license revocation provisions, "protect[s] the general public from drunk drivers." *Eggleston v. Dep't of Revenue*, 895 P.2d 1169, 1171 (Colo. App. 1995); *see also Turbyne v. People*, 151 P.3d 563, 569 (Colo. 2007) (one objective of the Expressed Consent Statute is to "obtain scientific evidence of the amount of alcohol in the bloodstream in order to curb drunk driving through prosecution for that offense" (quoting *Zahtila v. Motor Vehicle Div.*, 39 Colo. App. 8, 10, 560 P.2d 847, 849 (1977))); § 42-2-126(1)(a) (one purpose of the revocation provisions is to "provide safety for all persons using the highways of this state by quickly revoking the driver's license of . . . any person who has refused to submit to an analysis as required by section 42-4-1301.1").

¶ 23     But, on the other hand, "[b]lood draws are 'significant bodily intrusions,'" as they "require piercing the skin," "extract a part of the subject's body," and "place[] in the hands of law enforcement authorities a sample that can be preserved and from which it is possible to extract information beyond a simple [blood alcohol

12

concentration] reading." *Birchfield v. North Dakota*, 579 U.S. ___, ___, 136 S. Ct. 2160, 2178 (2016) (citations omitted).

¶ 24     Limiting the forced testing of DUI and DWAI suspects also minimizes potentially violent confrontations between law enforcement officers and drivers who are unwilling to submit to a test. *See, e.g., Hitchens*, 294 N.W.2d at 688 (allowing DUI suspects to refuse testing "avoid[s] physical confrontations between the police and motor vehicle drivers"); *State v. DiStefano*, 764 A.2d 1156, 1163 (R.I. 2000) (testing DUI suspects only with their consent "prevent[s] a violent confrontation between an arresting officer and a suspect unwilling to submit to a test") (citation omitted); *see also Combs v. Commonwealth*, 965 S.W.2d 161, 164 (Ky. 1998) ("In a DUI situation, the suspect may be highly intoxicated[,] which increases the risk of physical confrontation with police . . . .").

¶ 25     Several states' implied consent statutes strike this balance like Colorado's statute does — by allowing forced tests in limited circumstances but otherwise relying on the threat of penalties to persuade drivers to cooperate with testing. *See, e.g., Birchfield*, 579 U.S. at ___, 136 S. Ct. at 2184 (noting that "it is possible to extract a blood sample from a subject who forcibly resists" but that "many

13

States reasonably prefer not to take this step," and citing as an example North Dakota, which "generally opposes this practice because of the risk of dangerous altercations between police officers and arrestees in rural areas where the arresting officer may not have backup" and thus allows forced testing only where an accident results in death or serious injury) (citations omitted); *Hitchens*, 294 N.W.2d at 688 (explaining that Iowa's statute "recognizes a driver's 'right' to refuse testing" but "extracts a penalty for exercising the right," in an effort to "motivate[] drivers to take the test . . . without resorting to physical compulsion").

¶ 26    In fact, several of those states whose implied consent laws expressly address warrants limit warrant-based testing to specific, enumerated circumstances.  *See, e.g.*, Iowa Code Ann. § 321J.10(1) (West 2020) (only if a traffic accident has resulted in death or personal injury reasonably likely to cause death); Ky. Rev. Stat. Ann. § 189A.105(2)(b) (West 2020) (only if a person is killed or suffers physical injury as a result of the incident); N.M. Stat. Ann. § 66-8-111(A) (West 2020) (only with probable cause to believe the driver caused death or great bodily injury to another or committed a felony while under the influence of alcohol or drugs); R.I. Gen. Laws

14

Ann. § 31-27-2.9(a) (West 2020) (only with probable cause to believe the driver committed one of four listed offenses); Vt. Stat. Ann. tit. 23, § 1202(d)(6)(B), (f) (West 2020) (only if an accident results in death or serious bodily injury to another).

¶ 27　　Ultimately, the weighing of competing interests is a task for the General Assembly, not for the courts. *See Burnett v. State Dep't of Nat. Res.*, 2015 CO 19, ¶ 13 ("The balance between . . . two competing interests 'is for the legislature alone to reach.'" (quoting *Medina v. State*, 35 P.3d 443, 453 (Colo. 2001))). Here, the General Assembly has balanced the interests by providing for temporary revocation of the license of a driver who refuses testing; by allowing evidence of the refusal to be admitted at a trial for DUI or DWAI; and by authorizing officers to compel blood testing, regardless of a driver's refusal, if the officer has probable cause to believe the driver has committed criminally negligent homicide, vehicular homicide, third degree assault, or vehicular assault. § 42-2-126(2)(h), (3)(c)(I); § 42-4-1301(6)(d); § 42-4-1301.1(3). We cannot upset that balance by adding additional exceptions not provided in the statute. *See Miller v. City & Cnty. of Denver*, 2013 COA 78, ¶ 22 ("When a statute announces a general rule and makes no exception to that rule, a

15

court is ordinarily not authorized to create an exception or add a qualifying provision not intended by the lawmakers." (quoting 1A Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutory Construction* § 20:22 (7th ed. 2007))).

¶ 28    We therefore reject the People's argument that the interpretation we are adopting treats suspected drunk drivers better than other suspected offenders, who may be subject to search warrants authorizing blood draws.  The General Assembly has decided that, in the case of someone who is suspected of driving under the influence of alcohol or drugs but is not suspected of one of the four listed offenses, the driver may be motivated to cooperate with testing by threatened punishments but may not be forced to undergo such testing.  *See Hitchens*, 294 N.W.2d at 688 (rejecting a similar argument where "the statute does not simply expand the rights of an allegedly drunken driver, it also extracts a price from the driver for recognizing the power to refuse testing").

¶ 29    We also reject the People's argument that the Expressed Consent Statute provides for searches under the consent exception to the Fourth Amendment's warrant requirement and thus has no application where a warrant is issued.  As explained previously, the

16

statutory language is unequivocal and makes no reference to or exception for warrants.  And while the statute assumes that drivers impliedly consent to its provisions by driving in the state, it also assumes that drivers may revoke their consent.  *See Simpson,* ¶ 21 n.1 (recognizing that drivers may "revoke[]" their consent to testing); *People v. Hyde,* 2017 CO 24, ¶ 24 n.3 (same).  For that revocation of consent — and the punishments that go with it — to mean anything, officers cannot override it by obtaining a warrant.

¶ 30     It is also not entirely accurate to view the Expressed Consent Statute as falling within an exception to the warrant requirement. Although the statute is based in part on a notion of implied consent, it still doesn't abrogate constitutional requirements.  Thus, for instance, if drivers revoke their implied consent to testing, warrants still may be required.  *See Missouri v. McNeely,* 569 U.S. 141, 156 (2013) ("[W]hile the natural dissipation of alcohol in the blood may support a finding of exigency in a specific case, . . . it does not do so categorically.  Whether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances."); *People v. Schaufele,* 2014 CO 43, ¶¶ 28, 42 (plurality opinion) (recognizing

17

that even where the Expressed Consent Statute authorizes forced blood draws on drivers who revoke their consent, a warrant may be required absent exigent circumstances).

¶ 31     Therefore, we conclude that law enforcement officers cannot use a warrant to circumvent the Expressed Consent Statute, which limits the circumstances in which DUI or DWAI suspects may be forced to undergo blood testing. And because the officers in this case had no probable cause to believe Raider had committed one of the four offenses listed in the statute, their forced blood draw, though conducted pursuant to a warrant, violated the statute.

C.     Remedy for Noncompliance with the Statute

¶ 32     We next consider the appropriate remedy for the statutory violation. Raider seeks dismissal of the criminal charges but argues in the alternative for suppression of the illegally obtained evidence. The People, however, contend that suppression is not an available remedy in the absence of a constitutional violation and that dismissal is not appropriate under the circumstances of this case.

¶ 33     Trial courts ordinarily have discretion to fashion appropriate remedies for violations of the Expressed Consent Statute. *People v. Null*, 233 P.3d 670, 681 (Colo. 2010); *Turbyne*, 151 P.3d at 569.

But where the trial court doesn't decide the issue of remedy, or where an appellate court concludes that the trial court abused its discretion in its choice of remedy, the appellate court can decide the issue. *See Turbyne,* 151 P.3d at 570-73; *Riley,* 104 P.3d at 222.

¶ 34     Here, the trial court didn't consider the appropriate remedy since it found no statutory violation had occurred. Considering the relevant facts, which are not in dispute, we conclude that suppression of the illegally obtained test results is warranted but dismissal of the charges is not.

¶ 35     It is true, as the People point out, that our supreme court has recognized that "[s]uppression of evidence is generally reserved to remedy violations of constitutional rights, and is not used to remedy statutory violations." *People v. Clayton,* 207 P.3d 831, 838 (Colo. 2009). Nonetheless, in the context of the Expressed Consent Statute, the supreme court has held that "suppression of evidence may be appropriate" as a sanction "to remedy improper police conduct." *Turbyne,* 151 P.3d at 570. It also has upheld the suppression of evidence due to violation of the statute, even where there was no alleged constitutional violation. *See Null,* 233 P.3d at 681-82 (affirming suppression of a driver's refusal to take a

19

particular test where the officer failed to provide the driver with the type of test he chose, as required by the statute); *Turbyne*, 151 P.3d at 572 (ordering suppression of test results where an officer coerced a driver to consent to a breath test when the blood test the driver had selected was unavailable); *see also People v. Maclaren*, 251 P.3d 578, 583 (Colo. App. 2010) ("[T]rial courts . . . have broad discretion to suppress evidence as a sanction for improper police conduct in implementing the express or implied consent statute."), *overruled on other grounds by Smith*, 254 P.3d at 1159.

¶ 36    More generally, the supreme court has warned that "law enforcement may not violate a defendant's statutory rights with impunity." *Null*, 233 P.3d at 682.  Here, if violation of the statute's prohibition on forced tests is to have any consequence, the results of an illegal forced test must be excluded from evidence.  Indeed, the statute provides for admission into evidence of results from forced testing conducted pursuant to the four listed exceptions, § 42-4-1301(6)(e), suggesting that results from forced testing are inadmissible in other circumstances.

¶ 37    The two cases on which the People primarily rely are distinguishable.  In *Clayton*, the supreme court held that any

potential violation of a suspect's statutory right to call a family member at the earliest possible time after his arrest did not require suppression of the suspect's statements, as it did not undermine his voluntary waiver of his *Miranda* rights. 207 P.3d at 836-38. And in *People v. Shinaut,* the supreme court held that suppression was not warranted where an officer permitted a driver to change his mind (which the Expressed Consent Statute does not permit) and take a blood test after initially requesting a breath test. 940 P.2d 380, 383-84 (Colo. 1997). The court reasoned that, although there was a technical violation of the statute, the driver "was not deprived of any right that would justify rendering the blood test results inadmissible." *Id.* at 384.

¶ 38    Here, by contrast, we have concluded that the statute afforded Raider the right to refuse a test, which would carry the penalties of temporary loss of his driver's license and admission of his refusal at trial, but which could not be overridden by a warrant. The forced blood draw — conducted while Raider was locked in four-point leather restraints and held down by officers — violated that right. Suppression of evidence from the test is therefore warranted.

¶ 39    But while suppression is an appropriate remedy in this case, dismissal of the charges against Raider is not.  The supreme court has recognized dismissal of charges as another potential sanction for violation of the Expressed Consent Statute.  But the court has expressed that this remedy may be appropriate "to prevent manifest unfairness in governmental procedures relating to the acquisition and preservation of evidence potentially favorable to an accused." *Turbyne*, 151 P.3d at 569 (quoting *People v. Gillett*, 629 P.2d 613, 619 (Colo. 1981)).  In accordance with that purpose, the court has approved this remedy only in circumstances where the statutory violation resulted in a failure to obtain evidence that may have been favorable to the driver.  *See Null*, 233 P.3d at 681-82 (officer failed to provide the driver with the type of test he chose); *Riley*, 104 P.3d at 222 (same); *Gillett*, 629 P.2d at 619 (same).  It makes sense to dismiss criminal charges where officers' actions deprive a defendant of potentially exculpatory evidence.  But no such circumstances exist in this case.

¶ 40    Accordingly, we conclude that suppression of evidence from the illegally obtained test is warranted, but dismissal of the charges against Raider is not.  Thus, the trial court should have excluded

evidence concerning the illegal test at trial. We also conclude that admission of the evidence substantially influenced the verdict or affected the fairness of the proceedings as to both counts. *See Hagos*, ¶ 12. The prosecution relied heavily on the test results to establish the DUI charge, and it relied heavily on Raider's resistance to the forced blood draw to establish the obstructing a peace officer charge. It is unclear (and the parties have not addressed) what impact the illegality of the forced blood draw may have on the obstruction charge, given that "[i]t is not a defense to a prosecution under this [statute] that the peace officer was acting in an illegal manner, if he or she was acting under color of his or her official authority." § 18-8-104(2), C.R.S. 2020. But, at a minimum, we conclude that the admission of the inculpatory test results substantially influenced the jury's verdict on this charge. Therefore, both convictions must be reversed.

## III. Conclusion

¶ 41     The judgment of conviction is reversed, and the case is remanded for a new trial on both charges.

JUDGE ROMÁN and JUDGE FOX concur.

23