# IN THE COURT OF APPEALS OF IOWA

No. 23-1502
Filed April 23, 2025

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**ALEXANDER HARRISON BACHMAN,**
Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Becky Goettsch, Judge.

A defendant appeals his conviction for operating while intoxicated, third offense, challenging the district court's denial of his motion to suppress. **AFFIRMED**.

David V. Newkirk (argued), Christine E. Branstad, and Nathan Olson of Branstad & Olson Law Office, Des Moines, for appellant.

Brenna Bird, Attorney General, and Joshua A. Duden (argued), Assistant Attorney General, for appellee.

Heard at oral argument by Greer, P.J., and Langholz and Sandy, JJ.

**LANGHOLZ, Judge.**

Alexander Bachman seeks to suppress his blood test results that were obtained with a warrant and submitted as evidence to convict him of operating while intoxicated, third offense. He argues that the officer invoked the implied-consent procedures of Iowa Code chapter 321J (2022) by offering him a preliminary breath screening test ("PBT") and was thus required to exclusively follow the implied-consent procedures rather than seeking a warrant. But neither the text of the statute nor precedent supports Bachman's interpretation that the implied-consent procedures become mandatory merely because a PBT is offered. Implied consent is invoked only when an officer requests a motor vehicle operator to submit to a chemical test of the operator's blood, breath, or urine. The officer never did that here—he got a warrant. And that does not violate the statute. We thus affirm the district court's suppression ruling and Bachman's conviction.

I.

About 1:00 a.m. early one morning in December 2022, a Windsor Heights police officer ran the license plate of the sports utility vehicle ("SUV") stopped ahead of him at a stoplight. The check showed that Bachman was the registered owner, that his license was revoked, and that he was required to have an ignition-interlock device installed in his vehicle but did not yet have one installed. By the time the officer received this information back, the SUV was well ahead of him. So the officer tried to catch up to stop the SUV to investigate the potential offenses. As the officer caught up, he saw the SUV driving down the wrong side of the road and almost hitting a parked car. The officer turned on his flashing lights to stop the SUV. Still, it did not stop for about thirty seconds before turning into a driveway.

The officer parked his patrol vehicle in the street at the foot of the driveway, got out of the vehicle, and left its flashing lights on. As the officer approached the SUV, the driver—who was eventually identified as Bachman—began to back it out of the driveway, seemingly oblivious to the officer or the flashing lights. The officer repeatedly yelled for Bachman to "stop the car" and shined the flashlight at Bachman trying to get his attention. But Bachman continued backing up—and looked like he was going to drive into the officer's vehicle. The officer thought that Bachman's face "looked disoriented and impaired" and Bachman was delayed in reacting. When the SUV stopped backing up for a second, the officer tried to approach the driver's door and Bachman gunned the gas—but the SUV did not move because it was in neutral. The officer then managed to open the passenger door, reach in, and turn off the SUV.

Bachman tried to escape the SUV against the officer's instructions. The officer grabbed his arm, but Bachman slipped his arm out of his shirt and continued to get out of the SUV. Running around to the other side of the car, the officer detained Bachman. Throughout this encounter, the officer observed that Bachman had red, watery eyes and smelled that Bachman had a strong odor of alcohol. And so, the officer took Bachman to the fire department garage to conduct further investigation into whether Bachman was operating the SUV while intoxicated.

At the fire department, the officer asked Bachman to perform each of the standardized field sobriety tests. Bachman refused them all. The officer also asked him to submit to a PBT. And Bachman refused that too. Because a background check showed that Bachman had two operating-while-intoxicated convictions, the officer decided to seek a warrant for a blood draw and test.

Indeed, the officer told another officer assisting that because he was "going to do a warrant" they could not "invoke implied consent." So Bachman was placed in a holding cell while the officer successfully applied for a warrant from a judge.

After obtaining the warrant, the officer met a county medical examiner employee and Bachman at the police station to conduct the blood draw. Bachman tried at first to decline the blood draw. But the officer repeatedly explained that he could not refuse because a judge ordered a warrant for the blood draw and that his blood would "get drawn one way or the other." Bachman eventually complied with the blood draw. The blood test results showed that Bachman's blood alcohol concentration was 0.243 and he had cocaine metabolites in his system.

A couple of days later, Bachman was charged with operating while intoxicated, third offense, under Iowa Code section 321J.2(2)(c) and driving while license revoked under Iowa Code section 321J.21(1). Bachman moved to suppress his blood test results. He argued that the blood test was obtained in violation of the implied-consent procedures under Iowa Code chapter 321J and that the officer was required to follow those procedures because he offered Bachman a PBT. Bachman also argued that the blood draw violated his rights to be free from unreasonable searches and seizures and his due-process and equal-protection rights under the state and federal constitutions.

The parties agreed to a stipulated factual record made up of the videos of the encounter, the officer's report, and the warrant for the blood draw and test. And after oral argument, the district court denied Bachman's motion. The court reasoned that under existing precedent, "a blood sample obtained by a search warrant . . . is not prohibited by Iowa Code [chapter] 321J." The court also held

that the blood draw obtained by a warrant did not violate Bachman's constitutional rights. Bachman moved for reconsideration and enlargement, arguing, among other things, that the court did not address his claim that the officer invoked the implied-consent procedures by requesting a PBT. The court denied the motion but did clarify that "[t]he officer had not invoked implied consent at [the] point" he had merely "asked whether the defendant would do field tests and/or take a PBT."

Bachman then waived his right to a jury trial and stipulated to a trial on the minutes. The court found him guilty on both counts. On the operating-while-intoxicated conviction, the court sentenced him to an indeterminate prison term not to exceed five years with all but thirty days suspended and a three-year probation term. On the driving-while-license-revoked conviction, the court imposed only a fine. Bachman now appeals.

II.

Bachman argues that the district court erred in denying his motion to suppress the blood test results because the blood draw violated the implied-consent procedures of Iowa Code chapter 321J.[1] And the State counters that the requirements did not apply because the officer never invoked the implied-consent statute. We review a district court's ruling on a motion to suppress based on an alleged violation of the implied-consent statute for correction of errors at law. *See State v. Flynn*, 13 N.W.3d 843, 846 (Iowa 2024).

Under Iowa's implied-consent statute, drivers who "give reasonable grounds to believe that the person has been operating a motor vehicle" while

---

[1] On appeal, Bachman does not pursue his arguments for suppression under the state or federal constitutions.

intoxicated are "deemed to have given consent to the withdrawal of specimens of the person's blood, breath, or urine and to a chemical test or tests of the specimens for the purpose of determining the alcohol concentration or presence of a controlled substance or other drugs." Iowa Code § 321J.6(1). The chemical test "shall be administered at the written request of a peace officer" if (1) the officer has "reasonable grounds to believe that the person was operating a motor vehicle" while intoxicated and (2) one or more of the seven statutory "conditions exist." *Id.* One of those conditions is when "[t]he person has refused to take a preliminary breath screening test provided by this chapter." *Id.* § 321J.6(1)(c).[2]

When an officer invokes the implied-consent statute by requesting the driver to "consent to provide a [bodily] specimen for chemical testing" while having reasonable grounds and one or more of the statutory conditions exist, then "[t]he statutory implied consent procedure must be followed." *Flynn*, 13 N.W.3d at 851. Among other things, these procedures require that the officer's request be in writing and that the officer give a specific statutory advisory about the potential consequences of refusing or submitting to the chemical test. *See id.* at 848–49; *see also* Iowa Code § 321J.6(1) (requiring "written request"); *id.* § 321J.8 (setting forth the advisory). And "[i]f a person refuses to submit to the chemical testing, a test shall not be given." Iowa Code § 321J.9(1). But a person who refuses chemical testing is still subject to the revocation of the person's driver's license or nonresident operating privilege. *See id.*

---

[2] Other authorizing conditions include when the person: (1) has been lawfully arrested for operating while intoxicated, (2) has been in a car accident "resulting in personal injury or death," and (3) has taken a PBT showing various results, some combined with other circumstances. *See* Iowa Code § 321J.6(1)(a), (b), (d)–(g).

Because the implied-consent procedures are mandatory once invoked, the failure to comply with the implied-consent statute after invoking it renders any chemical test then given "not competent for the purposes of" criminal prosecution. *Flynn*, 13 N.W.3d at 849. And so, a chemical test must be suppressed when an officer invoked the implied-consent statute but did not make his request for the driver's consent to the test in writing or advise the driver of the consequences of refusing or submitting to the test. *See id.* at 846, 851. So too is suppression generally required when an officer obtains a warrant to force testing after invoking the implied-consent statute and receiving a refusal in response from the driver. *See State v. Hitchens*, 294 N.W.2d 686, 687 (Iowa 1980).[3]

But just last year, the supreme court reaffirmed that "[t]he implied consent statute is not the exclusive means by which law enforcement may obtain chemical testing." *State v. Laub*, 2 N.W.3d 821, 826 (Iowa 2024) (cleaned up). That statute "does not limit the State's authority to obtain a search warrant" to require a driver to submit to chemical testing when the officer does not first invoke implied consent. *Id.* (cleaned up). So we must decide whether the district court correctly found that the officer never invoked the implied-consent statute before obtaining a warrant.

There is no dispute that the officer never asked Bachman to consent to a chemical test. Rather, he obtained a warrant authorizing a blood draw and test and told Bachman he could not refuse because it was ordered by a judge and

---

[3] The one exception permitting a warrant after invocation and a refusal—which was added to the statute after *Hitchens*—is when "[t]here are reasonable grounds to believe that one or more" drivers were intoxicated while driving and proximately caused "[a] traffic accident" that "resulted in a death or personal injury reasonably likely to cause death." Iowa Code § 321J.10(1).

would happen no matter what. Yet Bachman argues that the officer still invoked implied consent by requesting Bachman to take a PBT.

Bachman's logic goes like this: The refusal to take a PBT is one of the seven enumerated statutory conditions that must exist—along with reasonable grounds to believe the driver was operating while intoxicated—before an officer may properly invoke implied consent. *See* Iowa Code § 321J.6(1)(c). So if Bachman refused to take the PBT and the officer had reasonable grounds to believe he had operated while intoxicated, then—according to Bachman—the officer *must* administer a chemical test, if at all, exclusively under the implied-consent procedures. But this faulty logic is not supported by the statutory text or precedent.

Starting with the text, Bachman points to the statute's use of the mandatory term "shall" as imposing a duty on the officer to test under the statutory procedures when the statutory prerequisites are met. *See id.* § 4.1(30)(a); *Flynn*, 13 N.W.3d at 847. True, the statute does provide that the chemical test "shall be administered *at the written request of a peace officer*" if the statutory prerequisites are met. Iowa Code § 321J.6(1) (emphasis added). But Bachman's laser focus on "shall" overlooks the rest of the phrase specifying when the duty imposed by the word "shall" applies. *See Mid Am. Constr. LLC v. Sandlin*, 2 N.W.3d 838, 849 (Iowa 2024) ("When determining the meaning of a statute, a core canon of statutory interpretation requires us to construe the statute as a whole."). The duty to administer the chemical test kicks in not merely when the statutory prerequisites exist, but only "at the written request of" the officer. Iowa Code § 321J.6(1). Without a request by an officer for a driver's consent to administer a chemical test, the statute imposes no duty. And nothing in this provision—or any other in

chapter 321J—requires an officer to request consent for a chemical test just because the officer requested a PBT.

Bachman's contrary interpretation flouts the clear statutory text putting the authority to invoke implied consent with the officer. And it "upends" a statute "meant to restrain an officer from invoking the statutory implied consent procedure rather than to compel the officer to do so." *Laub*, 2 N.W.3d at 830. What's more, if the existence of any of the enumerated statutory conditions mandates following the implied-consent procedures, that would mean that the statute could be invoked without the officer doing anything at all. One of the enumerated conditions is when the driver has been in a car accident "resulting in personal injury or death." Iowa Code § 321J.6(1)(b). So under Bachman's interpretation, any time a driver is in an accident that causes a personal injury—yet is not serious enough to "result[] in a death" or an "injury reasonably likely to cause death" and to thus fall within the statutory exception permitting warrants—an officer would be deemed to have invoked implied consent even before doing anything. *See id.* § 321J.10(1). That would make no sense.[4]

Precedent also supports our interpretation of the implied-consent statute that an officer invokes it by requesting a driver to "consent to provide a [bodily]

---

[4] Bachman's secondary statutory arguments fare no better. The limited uses of the results of a PBT do not assist us in deciding whether requesting a PBT invokes the implied-consent statute—particularly when that and other provisions governing PBTs are enacted in a separate statutory section. *See* Iowa Code § 321J.5(2). Nor does the time limitation on testing that applies under the implied-consent statute. *See id.* § 321J.6(2); *see also id.* § 321J.18 (providing that the implied-consent statute "does not limit the introduction of any competent evidence . . . including the results of chemical tests of specimens of blood, breath, or urine obtained more than two hours after the person was operating a motor vehicle").

specimen for chemical testing" while having reasonable grounds that the driver was operating while intoxicated and one or more of the statutory conditions exist. *Flynn*, 13 N.W.3d at 851. To be sure, when an officer does request the driver's consent and the other statutory requirements for implied-consent are met, then the officer has invoked implied-consent and must follow the statute. *See id.* at 848–49. In that circumstance, the officer cannot claim to seek consent outside the statute because the implied-consent statute occupies the field as the "comprehensive statutory scheme to implement the consent exception to the constitutional preference for search warrants." *Id.* at 850–51 (cleaned up).

But here we fall outside that bright-line invocation rule established by *Flynn* because—although the officer had reasonable grounds to believe Bachman had been operating while intoxicated and the PBT refusal satisfied one of the statutory conditions authorizing the officer to request Bachman's consent to a chemical test—the officer never made that request. *Cf. id.* at 848–49. Without making that request, one of the statutory prerequisites to imposing the implied-consent procedures on the officer and the statute's consequences on Bachman was missing. The implied-consent statute was not invoked.[5] And when the statute is not invoked, it does not "preclude[] a peace officer from obtaining and executing a search warrant for the collection of bodily specimens." *Laub*, 2 N.W.3d at 832; *see also State v. Frescoln*, 911 N.W.2d 450, 453–54 (Iowa Ct. App. 2017) (holding that

---

[5] We note that *Flynn* also involved a case where the officer first requested a PBT, and the supreme court did not hold that the officer invoked implied-consent by making the request for the PBT, but rather, held "that [the officer] invoked the implied consent statute when he requested Flynn, who had failed a preliminary breath test and was under arrest, consent to provide a breath specimen for chemical testing." *Flynn*, 13 N.W.3d at 851.

the implied-consent statute did not prohibit an officer from obtaining a warrant for a blood draw and test after the driver refused a PBT because the officer "never invoked the implied consent procedures and [the driver] never refused a chemical test").

Bottom line, offering a driver a PBT does not invoke the implied-consent statute. Because the officer here did not invoke the implied-consent statute—by requesting that Bachman consent to a chemical test while having reasonable grounds to believe that Bachman had operated while intoxicated and one or more of the statutory circumstances authorizing the request existed—the officer was not required to follow the implied-consent procedures. Nor was the officer prohibited from obtaining a warrant for the blood draw and test independently of the implied-consent statute. The district court correctly denied Bachman's motion to suppress the blood test results.

**AFFIRMED**.