The STATE of Ohio, Appellee,

v.

KUTZ, Appellant.

[Cite as *State v. Kutz* (1993), 87 Ohio App.3d 329.]

Court of Appeals of Ohio,
Lucas County.

No. L–92–208.

Decided April 23, 1993.

*Anthony G. Pizza,* Lucas County Prosecuting Attorney, *J. Christopher Anderson* and *John H. Schaeffer,* Assistant Prosecuting Attorneys, for appellee.

*Henry B. Herschel,* for appellant.

*Per Curiam.*

This is an appeal from a judgment of the Lucas County Court of Common Pleas. Appellant, William Kutz II, is appealing his conviction and sentence for

one count of aggravated vehicular homicide in violation of R.C. 2903.06 with a specification of driving under the influence. For the reasons that follow, we affirm the decision of the trial court.

The facts of this case as established at a hearing on a motion to suppress are as follows. On August 10, 1991, Kutz was involved in an automobile accident when his vehicle collided with another vehicle in which Rhonda Carpenter was a passenger. Carpenter was killed and Kutz suffered injuries. Police at the scene of the accident noticed an odor of alcohol about Kutz and followed Kutz as he was transported to Toledo Hospital. While at the hospital, investigating officers again noticed a strong odor of alcohol about Kutz and also noted that his eyes were glassy and bloodshot. Officers administered the horizontal gaze nystagmus test to Kutz, who performed unsatisfactorily. Officers then requested a blood sample from Kutz pursuant to the implied consent statute, R.C. 4511.191, which Kutz refused.

Shortly thereafter, investigative officers obtained a search warrant authorizing Sergeant Jerry DuFour of the Ohio State Highway Patrol to obtain a blood sample from Kutz. Sergeant DuFour informed Kutz he had a search warrant to obtain a blood sample and showed Kutz the warrant itself. Nancy Duckworth, a registered nurse employed by the Toledo Hospital, proceeded to obtain the blood sample from Kutz at Sergeant DuFour's request. A subsequent analysis of the blood sample established a blood-alcohol level of .04.

Following his arrest and indictment on several counts, Kutz moved to suppress the evidence of the blood sample. The trial court denied the motion to suppress. Subsequently, Kutz entered a plea of no contest to one count of aggravated vehicular homicide with a driving under the influence specification. The prosecutor made a statement to the trial court as to the evidence that the state would have presented had the case proceeded to trial. The trial court then accepted Kutz's no contest plea, found him guilty of aggravated vehicular assault with a driving under the influence specification and sentenced him to a term of imprisonment.

It is from such judgment that Kutz raises the following eight assignments of error:

"First Assignment of Error

"The trial court erred in finding that the state was allowed to withdraw the defendant's blood for blood alcohol testing purposes following the defendant's implied consent refusal.

"Second Assignment of Error

"The trial court erred in not finding that the actions of the police amounted to an illusory advisory to the defendant, thus violating the defendant's due process rights.

"Third Assignment of Error

"The trial court erred in finding that the defendant was in custody at the time of the non-consensual blood draw.

"Fourth Assignment of Error

"The trial court erred in not finding that the execution of the search warrant by the state through Nurse Duckworth was improper and thus required the suppression of the search.

"Fifth Assignment of Error

"The court erred in not finding that the non-consensual blood draw was taken in violation of the physician-patient privilege and thus should have been suppressed.

"Sixth Assignment of Error

"The trial court erred in finding the defendant guilty of aggravated vehicular homicide, as the statement of facts read by the prosecuting attorney did not amount to an aggravated vehicular homicide and negated the elements of aggravated vehicular homicide.

"Seventh Assignment of Error

"The trial court erred in finding that the defendant recklessly caused the death of another through the operation of a motor vehicle.

"Eighth Assignment of Error

"The trial court erred in finding that the defendant was under the influence of alcohol at the time of the offense."

The first two assignments of error will be addressed together. Essentially, Kutz argues that the blood sample was unlawfully obtained under the implied consent statute, R.C. 4511.191, thus constituting an unconstitutional search and a violation of his right to due process.

■ It is well-settled law that the obtaining of a blood sample does not, in itself, violate the constitutional right to due process or the constitutional right prohibiting unreasonable searches and seizures. *Schmerber v. California* (1966), 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908. Therefore, at issue in the present case, is whether Ohio's implied consent statute prohibits the introduction of the blood sample into evidence.

The implied consent statute, R.C. 4511.191, reads in pertinent part as follows:

"(A) Any person who operates a vehicle upon a highway or any public or private property used by the public for the purposes of vehicular travel or parking within this state shall be deemed to have given consent to a chemical test or tests of his blood, breath, or urine, for the purpose of determining the alcohol, drug, or alcohol and drug content of his blood, breath, or urine if arrested for operating a vehicle while under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse, or for operating a vehicle with a prohibited concentration of alcohol in the blood, breath, or urine. The chemical test or tests shall be administered at the request of a police officer having reasonable grounds to believe the person to have been operating a vehicle upon a highway or any public or private property used by the public for the purposes of vehicular travel or parking in this state while under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse or with a prohibited concentration of alcohol in the blood, breath, or urine.

" * * *

"(D) If a person under arrest for operating a vehicle while under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse, or for operating a vehicle with a prohibited concentration of alcohol in the blood, breath, or urine refuses upon the request of a police officer to submit to a chemical test designated by the law enforcement agency as provided in division (A) of this section, after first having been advised of the consequences of his refusal as provided in division (C) of this section, no chemical test shall be given."

If a driver refuses to consent to a chemical test, R.C. 4511.191(D) further provides for the suspension of such person's driver's license.

Many jurisdictions outside Ohio have similar implied consent statutes. Annotation, Admissibility in Criminal Case of Blood–Alcohol Test where Blood Was Taken Despite Defendant's Objection or Refusal to Submit to Test (1982), 14 A.L.R.4th 690, 695. These jurisdictions are split as to whether a blood-alcohol test, based on a blood sample taken after a defendant's refusal, may be admitted in a criminal prosecution. *Id.* at 695. The majority of jurisdictions have held that because the implied consent statute specifically provides that no test shall be given after a driver's refusal, any blood test obtained will not be admissible into evidence in any criminal prosecution. See *State v. Hitchens* (Iowa 1980), 294 N.W.2d 686, and cases cited therein. However, a minority of jurisdictions have held that the implied consent statute is procedural in nature and, therefore, does not affect the admissibility of a blood test. *Id.* There is a third approach courts have taken making a blood test only inadmissible in a prosecution for driving under the influence but admissible in a prosecution for vehicular homicide. *Id.* These courts have held that, where the implied consent statute contains language making it applicable to prosecutions for driving under the influence, blood tests

are inadmissable only as to prosecutions for driving under the influence; there is nothing to prevent the introduction of blood tests in other criminal actions such as vehicular homicide. See *People v. Cords* (1977), 75 Mich.App. 415, 425, 254 N.W.2d 911, 916.

We are persuaded that this third approach, making a blood test taken over a driver's objection inadmissible in prosecutions for driving under the influence but admissible in other criminal actions, best reflects the intent underlying Ohio's implied consent statute. Ohio's implied consent statute specifically applies only to a person under arrest "for operating a vehicle while under the influence of alcohol * * * or for operating a vehicle with a prohibited concentration of alcohol * * *." Therefore, because Kutz was charged with vehicular homicide, the implied consent statute is inapplicable and does not affect the admissibility of the blood test result. Accordingly, the first and second assignment of error are found not well taken.

As his third assignment of error, Kutz argues that he was not under arrest, and, therefore, the blood sample was unlawfully obtained. Specifically, Kutz argues that *Schmerber* requires that a blood sample may only be obtained after a defendant has been placed under arrest.

We find that Kutz misunderstands the *Schmerber* decision. In general, a warrantless search is prohibited under the Fourth Amendment. See *Schmerber, supra,* 384 U.S. at 770, 86 S.Ct. at 1835, 16 L.Ed.2d at 919. However, there are a few carefully delineated exceptions to the warrant requirement, one being a search incident to arrest. Because no search warrant was obtained in *Schmerber,* the court concluded that the warrantless search of the defendant was justified as a search incident to arrest. *Id.* at 771, 86 S.Ct. at 1836, 16 L.Ed.2d at 920. If a search warrant had been obtained, the *Schmerber* court would have had no need to establish that the search was incident to arrest. Where a valid search warrant is obtained, prior to obtaining a blood sample from a driver, it is irrelevant whether or not such driver is under arrest.

In the present case, a valid search warrant was obtained prior to obtaining the blood sample from Kutz. Because police had a valid search warrant, whether Kutz was under arrest at the time the blood sample was obtained is of no consequence. Accordingly, the third assignment of error is found not well taken.

As the fourth assignment of error, Kutz argues that because the search warrant only authorized Sergeant DuFour to obtain Kutz's blood sample, the fact that Nurse Duckworth drew the blood sample requires suppression of the blood test results.

We do not find that where a police officer directs medical personnel to obtain a blood sample, and such medical personnel are not named in the search

warrant, that the execution of the search warrant is invalid. In fact, were an untrained police officer to attempt to withdraw a defendant's blood, such action may very well be deemed an unreasonable search in violation of the Fourth Amendment. The *Schmerber* court specifically held that the reasonableness of a search involving a blood sample was supported by the fact that medical personnel were utilized in obtaining the blood sample:

"Finally, the record shows that the test was performed in a reasonable manner. Petitioner's blood was taken by a physician in a hospital environment according to accepted medical practices. We are thus not presented with the serious questions which would arise if a search involving use of a medical technique, even of the most rudimentary sort, were made by other than medical personnel or in other than a medical environment—for example, if it were administered by police in the privacy of the stationhouse. To tolerate searches under these conditions might be to invite an unjustified element of personal risk of infection and pain." *Id.* at 771–772, 86 S.Ct. at 1836, 16 L.Ed.2d at 920.

Therefore, we find that where medical personnel obtain a blood sample, at the request of a police officer authorized to execute the search warrant for such blood sample, the blood sample is lawfully obtained.

Because Nurse Duckworth drew Kutz's blood at the direction of Sergeant DuFour, the police officer named in the search warrant, we find the blood sample was lawfully obtained. Accordingly, the fourth assignment of error is found not well taken.

As the fifth assignment of error, Kutz argues that the blood sample was taken in violation of the physician-patient privilege and, therefore, should have been suppressed.

In general, R.C. 2317.02(B)(1) renders testimony concerning any communication between a physician and patient inadmissible into evidence. However, the physician-patient privilege protects only communications made to a physician "by his patient in that relation or his advice to his patient * * *." R.C. 2317.02(B)(1). Communication is further defined as "any information * * * concerning any facts, opinions, or statements necessary to enable a physician or dentist to diagnose, treat, prescribe, or act for a patient." R.C. 2317.02(B)(3).

█ In the present case, there is no evidence that there was any physician-patient communication involved in obtaining the blood sample. Prior to obtaining the blood sample, police officers announced to Kutz that they had obtained a search warrant for a blood sample. Further, Kutz was given a copy of the search warrant itself prior to the withdrawal of blood. There was no evidence that such sample was needed or used for any medical purpose. Therefore, the withdrawal

of Kutz's blood did not involve communication protected by the physician-patient privilege. Accordingly, the fifth assignment of error is found not well taken.

As his sixth, seventh and eighth assignments of error, Kutz essentially argues that the trial court erred in finding Kutz guilty of aggravated vehicular homicide after accepting Kutz's no contest plea. Specifically, Kutz argues that there was no evidence to support a finding that Kutz was reckless, a necessary element of the offense of aggravated vehicular homicide.[1]

Crim.R. 11(B)(2) reads as follows:

"The plea of no contest is not an admission of defendant's guilt, *but is an admission of the truth of the facts alleged in the indictment*, information, or complaint and such plea or admission shall not be used against the defendant in any subsequent civil or criminal proceeding." (Emphasis added.)

In misdemeanor cases, a no contest plea "shall constitute a stipulation that the judge or magistrate may make [a] finding of guilty or not guilty from the explanation of circumstances * * *." R.C. 2937.07. However, in a felony case, neither the Criminal Rules nor statutes require a similar explanation of circumstances to the trial judge prior to a finding of guilt. *State v. Thorpe* (1983), 9 Ohio App.3d 1, 2, 9 OBR 1, 2, 457 N.E.2d 912, 914. Following a no contest plea in a felony case, "the prosecution does not have the obligation to present evidence proving the defendant guilty beyond a reasonable doubt." *Id.* at 2, 9 OBR at 2, 457 N.E.2d at 914. The trial court needs only to examine the facts alleged in the indictment to determine whether a defendant is guilty of the crime charged. The only exception to this rule is when a representation is made to the court, where such representation would negate a factual allegation of the indictment. *Id.*

In the present case, it is not disputed, nor does the evidence suggest, that Kutz's plea of no contest was other than knowing, intelligent and voluntary. Therefore, Kutz is deemed to have admitted the truth of the facts alleged in the indictment, including his admission that he operated his vehicle in a reckless manner. Further, there is nothing in the statement made by the prosecutor that negates the admission of recklessness in the indictment. In fact, the prosecutor stated there would have been evidence to show that Kutz had consumed at least some alcohol and was speeding at the time of the accident. Neither of these representations by the prosecutor served to negate the admission of recklessness. Therefore, we find the trial court properly accepted Kutz's no contest plea and

---

1. R.C. 2903.06, the aggravated vehicular homicide statute, reads in part as follows:

"No person, while operating or participating in the operation of a motor vehicle, motorcycle, snowmobile, locomotive, watercraft, or aircraft, shall recklessly cause the death of another."

found him guilty of aggravated vehicular homicide. Accordingly, the sixth, seventh and eighth assignments of error are found not well taken.

On consideration whereof, the court finds that the defendant was not prejudiced or prevented from having a fair trial, and the judgment of the Lucas County Court of Common Pleas is affirmed. This cause is remanded to said court for execution of sentence. It is ordered that appellant pay the court costs of this appeal.

*Judgment affirmed.*

GLASSER, P.J., HANDWORK and MELVIN L. RESNICK, JJ., concur.