[Cite as *Cummings v. Summa Health Sys.*, 2024-Ohio-5796.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

MARIAN CUMMINGS, et al.

    Appellees

    v.

SUMMA HEALTH SYSTEM, et al.

    Appellants

C.A. No.    30969

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV-2020-11-3207

DECISION AND JOURNAL ENTRY

Dated: December 11, 2024

STEVENSON, Presiding Judge.

{¶1} Defendants-Appellants Summa Health System, Summa Health System Corp., Summa Health System Community, Summa Health, Summa Physicians, Inc. DBA Summa Health Medical Group, and Kevin L. Mayor, M.D. (collectively "Summa") appeal the judgment of the Summit County Court of Common Pleas that granted Plaintiffs-Appellees Mariann Cummings, Carol House, Kimberly House, and Andrea House's (collectively "Cummings") motion to compel discovery. For the reasons set forth below, this Court affirms.

I.

{¶2} This case arises from a medical malpractice suit filed by Cummings alleging that as a result of Summa's negligence, Mariann Cummings was misdiagnosed with lung cancer and underwent an unnecessary lobectomy of her upper-right lung after her biopsy tissue sample was cross-contaminated with that of another patient. The parties refer to that other patient as "Patient C."

**{¶3}** Cummings propounded written discovery requests upon Summa regarding the processing of Patient C's tissue sample. The particular discovery requests at issue in this appeal are Interrogatory Nos. 4-7 and 9-11 of Cummings' second set of Interrogatories, Interrogatory No. 8 of Cummings' third set of Interrogatories, and Requests for Admission Nos. 3-7 of Cummings' third set of Requests for Admission, which are as follows:

Identify the time, date, and place that Mariann Cummings' specimen from the August 31, 2019, biopsy tissue was grossed, embedded, and cut in relation to Patient C, specimen from the procedure that resulted in the tissue that contaminated Cummings' slides.

Were Mariann Cummings' and Patient C's specimens ever in the same place, and if so, when?

Identify where and when Patient C had her procedure as compared to Mariann Cummings' August 31, 2019, biopsy that resulted in the tissue that contaminated Cummings' slides.

Identify whether Patient C's procedure that resulted in the tissue that contaminated Mariann Cummings' slides had any of the same people present in the room as Mariann Cummings' August 31, 2019, biopsy, and if so, identify all such individuals.

Identify who grossed, embedded, and cut Patient C's specimen from the procedure that resulted in the tissue that contaminated Mariann Cummings' slides.

Identify the specific time difference between when Mariann Cummings' August 31, 2019, biopsy specimen was grossed and when Patient C's specimen was grossed that same day.

Admit a specimen from Patient C was grossed on September 3, 2019.

Admit a specimen from Patient C was grossed on September 3, 2019, by John Kuntz.

Admit Mariann Cummings' August 31, 2019, biopsy specimen and a specimen from Patient C were grossed back-to-back.

Admit Mariann Cummings' August 31, 2019, biopsy specimen and a specimen from Patient C were grossed sequentially.

Admit Mariann Cummings' August 31, 2019, biopsy specimen and a specimen from Patient C were grossed by the same person on September 3, 2019.

Admit Mariann Cummings' August 31, 2019, biopsy specimen and a specimen from Patient C were grossed within five minutes of each other.

Admit Mariann Cummings' August 31, 2019, biopsy specimen and a specimen from Patient C were grossed within ten minutes of each other.

{¶4} Cummings sought this information to rebut Summa's position that the cross-contamination was not the result of negligence, but instead, is something that occasionally just happens. Cummings wanted to investigate the lab process to determine where the contamination occurred and if it constituted negligence. To each request, Summa objected that the information sought was protected by physician-patient privilege under R.C. 2317.02(B)(1).

{¶5} Cummings moved to compel Summa to respond. Summa opposed the motion and moved for a protective order. Following a hearing, the trial court granted Cummings' motion and ordered Summa to produce answers to the above requests. In its ruling, the trial court reasoned as follows:

> As to the information [Cummings] seek[s] relating to where and when Patient C's sample was grossed, embedded, and cut, where and when her procedure took place relative to [Cummings'], and the people present (included who grossed, embedded, and cut the sample), Summa has not established that this information came from a conversation between a patient and their doctor, relates to diagnosis or treatment, or was necessary to enable a physician, advanced practice registered nurse, or dentist to diagnose, treat, prescribe, or act for a patient. Therefore, Summa has failed to meet its burden of proving that a privilege applies to the requested information. The information is discoverable.

{¶6} Summa timely appealed and asserts one assignment of error for our review.

II.

**ASSIGNMENT OF ERROR**

**THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT COMPELLED [SUMMA] TO PRODUCE INFORMATION ABOUT THE GROSSING, EMBEDDING, AND CUTTING OF A NON-PARTY PATIENT'S BIOPSY TISSUE AND DENIED [SUMMA'S] MOTION FOR A PROTECTIVE ORDER BASED ON THE PATIENT-PHYSICIAN PRIVILEGE CODIFIED IN OHIO R.C. 2317.02(B).**

**{¶7}** "Ordinarily, a discovery dispute is reviewed under an abuse-of-discretion standard. . . .However, if the discovery issue involves an alleged privilege . . . it is a question of law that must be reviewed de novo." *Ward v. Summa Health Sys.,* 2010-Ohio-6275, ¶ 13. Furthermore, cases such as this one involving the interpretation of a statute are a matter of law that an appellate court also reviews under a de novo standard. *Akron Centre Plaza, L.L.C v. Summit Cty. Bd. of Revision,* 2010 Ohio 5035, ¶ 10. Therefore, our review of this matter is de novo.

**{¶8}** "In general, a person's medical records are confidential." *Hageman v. Southwest Gen. Health Ctr*., 2008-Ohio-3343, ¶ 9. Physician-patient privilege has been codified in R.C. 2317.02 to deny the use of a person's confidential medical records in litigation except in limited circumstances. *Id*. R.C. 2317.02(B)(1) sets forth the scope of the physician-patient privilege as follows:

> The following persons shall not testify in certain respects:
>
> A physician, advanced practice registered nurse, or dentist concerning a communication made to the physician, advanced practice registered nurse, or dentist by a patient in that relation or the advice of a physician, advanced practice registered nurse, or dentist given to a patient, except as otherwise provided in this division, division (B)(2), and division (B)(3) of this section, and except that, if the patient is deemed by section 2151.421 of the Revised Code to have waived any testimonial privilege under this division, the physician or advanced practice registered nurse may be compelled to testify on the same subject.

**{¶9}** Pursuant to R.C. 2317.02(B)(5)(a) "communication" means:

> acquiring, recording, or transmitting any information, in any manner, concerning any facts, opinions, or statements necessary to enable a physician, advanced practice registered nurse, or dentist to diagnose, treat, prescribe, or act for a patient. A "communication" may include, but is not limited to, any medical or dental, office, or hospital communication such as a record, chart, letter, memorandum, laboratory test and results, x-ray, photograph, financial statement, diagnosis, or prognosis.

**{¶10}** "[A]ny statutory privilege must be strictly construed against the party seeking to assert it and may be applied only to those circumstances specifically named in the statute." *Ward*,

2010-Ohio-6275, at ¶ 15. Therefore, we construe the physician-privilege under R.C. 2317.02 strictly against Summa in this matter. Furthermore, the Ohio Supreme Court cautioned in *Ward* that "[w]e have never held that the physician-patient privilege provides absolute protection against the disclosure of medical information." *Id*. at ¶ 29.

**{¶11}** As further explained by the Eighth Appellate District, whether the communication is a privileged physician-patient communication under R.C. 2317.02(B)(1) is a two-pronged question:

> Prior to the application of R.C. 2317.02, there must be a determination that privilege actually attaches to the communications in question. In short, every communication within a medical record is not automatically subject to R.C. 2317.02. *State v. Kutz*, 87 Ohio App.3d 329 (6th Dist.). The decision on whether a specific communication in a medical record is privileged is made on a case-by-case basis. *State v. Garrett*, 8 Ohio App.3d 244 (10th Dist. 1983). *The determination is dependent on two factors: firstly, whether the conversation took place between a patient and their doctor or dentist, and secondly, whether the purpose of the conversation was for diagnosis or treatment.*

(Emphasis added.) *Morawski v. Davis*, 2023-Ohio-1898, ¶ 12 (8th Dist.).

**{¶12}** Thus, under R.C. 2317.02(B)(1), "a treating physician is only prohibited from disclosing matters communicated between the patient and physician in relation to treating, acting for, prescribing, or diagnosing the patient." *Loparo v. Univ. Hosps. Health Sys., Inc*. 2024-Ohio-663, ¶ 29 (8th Dist.) "A request is not seeking privileged information under the statute if it does not involve something that the patient communicated to the physician or vice versa." *Medina* v. *Medina Gen. Hosp*., 2011-Ohio-3990, ¶ 13 (8th Dist.). We agree with the Eighth District that to be a privileged communication under R.C.2317.02(B)(1), the communication must be between a patient and medical professional for the purpose of diagnosis, treatment, prescribing, or acting for the patient.

{¶13} Summa stored the grossing, embedding, and cutting information in Summa's Vantage and Laboratory Information System ("LIS") as an electronic pathology record. Summa argues that because the requested information resides in Patient C's medical record it is presumptively privileged regardless of whether it was conveyed between a physician and patient. Summa further argues that the requested information is in fact a privileged communication because it was generated in the process of Patient C's healthcare treatment. Specifically, Summa states that "[i]t is the fact that [Summa] *maintain*[*s*] *[the data]*, period, that makes this time data part of Patient C's confidential medical record." (Emphasis in the original.)

{¶14} Conversely, Cummings argues that Summa conflates the term "privilege" with "medical record" and ignores R.C. 2317.02(B)'s requirements regarding the substantive content of the requested information. Cummings argues that extraction from a confidential medical record alone is not sufficient to attach privilege as Summa alleges. Cummings' position is that the requested information, while stored in a medical record, is not privileged medical information that identifies Patient C, but instead, is internal raw time and date data regarding laboratory processes that is subject to disclosure. Cummings asserts that the information it seeks pertains solely to where, when, and by whom Patient C's lung specimen was retrieved, grossed, embedded, and cut, which does not affect the ability of a medical provider to diagnose, treat, prescribe, or act for Patient C, and therefore, does not qualify as a "communication" under R.C. 2317.02(B)(5)(a). We agree with Cummings.

{¶15} As previously noted, only those communications that are between a patient and her medical provider for the purpose to "treat, diagnose, prescribe or act" are privileged under R.C. 2317.02(B)(5)(a). As will be explained further below, information such as Cummings requested about time, place, and name of the technician that performed a medical test does not include

communications between a medical provider and patient and is not for the purposes of diagnosis or treatment of the patient. Therefore, that information is not privileged under R.C. 2317.02(B) in the first instance and is subject to disclosure.

{¶16} The Eighth District has addressed this issue and decided that the production of similar types of data do not violate the physician-patient privilege under R.C. 2317.02. In *Medina*, 2011-Ohio-3990 (8th Dist.), the plaintiff in a wrongful death action asked the defendant hospital to identify conduct and time data, specifically the number of times the defendant charted "end-tidal [carbon dioxide]" and the intervals at which she did so. *Id*. at ¶ 14. The Eighth District held that the request did not seek the disclosure of nonparty patient's confidential medical records, and that the provider's conduct in charting data was not precluded by the physician-patient privilege. *Id.*

{¶17} *Loparo*, 2024-Ohio-663 (8th Dist.), involved a wrongful death suit alleging the decedent was not timely treated in the emergency room. Plaintiff requested information regarding other patients' triage level, triage start and end time, and the employee who performed the triage to determine the severity of their symptoms and whether they were properly seen before the decedent. *Id*. at ¶ 4. Relying on its decision in *Medina*, the Eighth District noted that "[c]ourts have consistently held that health information, such as provider names, triage priority date, and time data (ex., triage times, discharge times, and treatment times), are not privileged because they do not involve communications as defined in R.C. 2317.02." *Id*. at ¶ 30. The *Loparo* court ultimately held that the requests were not protected health information nor privileged communications and were subject to disclosure. *Id*. at ¶ 31.

{¶18} In *Camacho v. Rose-Mary, Johanna Grasselli Rehab.*, 2024-Ohio-2802 (8th Dist.), the underlying suit asserted claims for wrongful death and personal injury following the death of

one of the residents at the group home operated by defendants. *Id.* at ¶ 2-3. The discovery requests at issue sought disclosure of any investigations of allegations of mistreatment of residents, documents related to those investigations, the names of those involved in the investigations, and administrative emails regarding staffing levels. *Id.* at ¶ 14. Defendants alleged that plaintiffs sought privileged information regarding the care of non-party minor residents that was not discoverable under R.C. 2317.02. *Id.* at ¶ 15. The Eighth District disagreed, reasoning as follows:

> No particularized information was adduced that would afford the trial court with the necessary information to establish that responsive records within Rose-Mary's possession required the disclosure of communications with doctors, dentists, or advanced practice registered nurses for the purpose of diagnosis or treatment. The requests seek emails between administrators about staffing and information related to incidents of abuse, neglect, mistreatment, physical injury, or safety violations concerning residents of Rose-Mary facilities.
>
> . . .
>
> Where responses to these requests may contain communications between covered health care professionals, Rose-Mary must establish that the communications within any given responsive record are subject to a privilege. "If any individual makes statements to a physician or psychologist for purposes other than diagnosis or treatment, such statements are not protected by the privilege."

(Internal citations omitted.) *Id.* at ¶ 30, 32.

{¶19} Another related case, *Turner v. Children's Hosp. Med. Ctr.*, 2015 WL 13653888 (S.D. Ohio Mar. 31, 2015) involved a lawsuit for malpractice and negligent credentialing following a publicly funded National Institute of Health ("NIH") study about the efficacy of an in-utero laser procedure used to treat a common complication of twin pregnancies. *Id.* at *1. Plaintiff sought the production of video records of third-party patients from the NIH study, the raw survival data from the study, and the communications between the oversight committee and monitoring board as well as the overseeing physician's hospital privileges. *Id.* The defendants (hospital and overseeing physician) opposed the production of those materials as protected from disclosure under R.C. 2317.02. *Id.* at *2. The District Court granted the plaintiff's motion to compel, reasoning that

[i]n seeking the raw survival data, Plaintiff is not seeking the disclosure of non-party confidential medical records themselves but instead requests non-privileged data derived or extracted from medical records and that is de-identified. *Simply because the information may have some relation to a medical procedure does not mean the information itself is privileged.*

(Emphasis added.) *Id*. at * 3. *See also May v. N. Health Facilities, Inc.*, 2009-Ohio-1442 (11th Dist.) (in wrongful death suit against nursing home, court held that names and last known addresses of decedent's roommates were not privileged information under R.C. 2317.02).

{¶20} We view the discovery requests in the instant matter as similar to those at issue in the aforementioned cases and are discoverable. As previously noted, here the interrogatories and requests for admission at issue seek dates, times, locations, and employee identities relative to the retrieval and laboratory processing of Patient C's lung tissue specimen. This raw data has no relevance to rendering a diagnosis or providing medical advice. It does not reveal individual medical conditions or health information. Therefore, it does not "concern any facts, opinion, or statements necessary to enable a physician to diagnose, treat, prescribe, or otherwise act for a patient." R.C. 2317.02(B)(5)(a). Accordingly, it is not the type of information defined as a "communication" under R.C. 2317.02(B)(5)(a).

{¶21} Secondly, the requests in this case do not "involve something that the patient communicated to the physician or vice versa." *Medina*, 2011-Ohio-3990, at ¶ 13 (8th Dist.). None of the requested information originated from Patient C, nor can it be characterized as the advice of a physician given to Patient C. There is no evidence of record that it was ever provided to Patient C or that it had any bearing on Patient C's choice of treatment.

{¶22} Summa relies on *Roe v. Planned Parenthood Southwest Ohio Region*, 2009-Ohio-2973, ¶ 46 for the proposition that medical records are generally considered confidential and not subject to disclosure, noting that the trial court acknowledged this baseline rule. First, we find *Roe*

distinguishable from the instant case. Unlike the circumstances here, the parties in *Roe* did not contest that the requested information was a confidential medical record. *Id.* at ¶ 26. The question in *Roe* was whether the confidential information could be disclosed in an identity-concealing redacted format under a balancing of interests' test. *Id*. at ¶ 28. As we have affirmed that the requested information in this case is not privileged under R.C. 2317.02, the issue of whether the law weighs in favor of disclosure is not applicable. Furthermore, as explained above, while the general principle is that medical records are considered to be confidential and privileged for litigation purposes, under R.C. 2317.02(B)(1) the physician-patient privilege is limited.

{¶23} Summa also argues that the data regarding Patient C's biopsy is privileged because it falls squarely within the R.C. 3701.74(A)(8) definition of "medical record." R.C. 3701.74 sets forth the procedure by which a patient or patient's representative may obtain a copy of the patient's medical record. R.C. 3701.74(A)(8) defines "medical record" as:

> data in any form that pertains to a patient's medical history, diagnosis, prognosis, or medical condition and that is generated and maintained by a health care provider in the process of the patient's health care treatment.

{¶24} In support of its argument, Summa relies on the Ohio Supreme Court case of *Griffith v. Aultman Hosp.*, 2016-Ohio-1138. In *Griffith*, the patient's estate filed an action against the hospital to compel the production of the deceased patient's complete medical record. *Id.* at ¶ 7. The *Griffith* Court held that the physical location of patient data is not relevant to determining whether the data qualifies as a "medical record" under R.C. 3701.74, and that the statutory definition pertains to the "patient's medical history, diagnosis, prognosis, or medical condition." *Id*. at ¶ 29.

{¶25} Summa argues that the trial court erred because it did not address this issue. We disagree because R.C. 3701.74 is inapplicable to this case. First, R.C. 3701.74 addresses a

"patient's" right to examine or obtain a copy of his or her *own* medical record and permits patients to file civil ligation to enforce that right. *Griffith* at ¶ 19. Summa's production of Mariann Cummings' own medical record is not the issue in the instant appeal. Secondly, R.C. 3701.74 says nothing about whether the information is a privileged physician-patient communication under R.C. 2731.02(B). Furthermore, the plain language of R.C. 3701.74(A) is clear that the definition of "medical record" set forth in (A)(8) applies only to R.C. 3701.74 and 741: *"[a]s used in this section and section 3701.741* of the Revised Code…" (Emphasis added.). It is not a general definition that applies outside the context of patients' requests to medical providers for their own medical records under R.C. 3701.74. Summa's argument on this point is overruled.

{¶26} Accordingly, considering all of the foregoing and construing the physician-patient privilege in R.C. 2317.02(B) strictly against Summa, we conclude that the trial court did not err in granting Cummings' motion to compel Summa's responses to the discovery requests because they seek time, date, place, and name data related to the processing of non-party Patient C's specimen which are not protected from disclosure. Summa has not met its burden of showing that the information is a privileged communication under R.C. 2317.02.

{¶27} Summa's single assignment of error is overruled.

III.

{¶28} The judgment of the Summit County Court of Common Pleas granting Cummings' motion to compel Summa's discovery requests is affirmed.

Judgment affirmed.

―――

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

SCOT STEVENSON
FOR THE COURT

FLAGG LANZINGER, J.
CONCURS IN JUDGMENT ONLY.

CARR, J.
CONCURRING.

{¶29} I concur in the majority's judgment. I write separately to clarify that, if a communication, as defined by the statute, is made between a patient and certain specified health care professionals, and no exception applies, it is privileged. *See* R.C. 2317.02(B)(1), (B)(5)(a). To be a communication, the information must be necessary for a listed healthcare professional to diagnose, treat, prescribe, or act for a patient. R.C. 2317.02(B)(5)(a). In other words, if the information is not necessary for diagnosis, treatment, etc., then by definition, it is not a communication and it is also not privileged. *See* R.C. 2317.02(B)(1), (B)(5). Because the Eighth

District in *Morawski v. Davis*, 2023-Ohio-1898, ¶ 12 (8th Dist.), quoted by the majority, has made this concept more complex and confusing than necessary, I would not rely on its analysis in setting forth the law in this area. Further, given that, in this context, communication has a very specific definition, I would refrain from using that word unless we are referring to the word as defined by the statute.

{¶30} I would also note that case law has indicated that communication includes more than just words, it includes "knowledge gained by observation[,]" which also encompasses "exhibition of the patient's body to the physician for examination, diagnosis or treatment." *Moore v. Grandview Hosp.*, 25 Ohio St.3d 194, 197 (1986). Thus, nothing in this opinion should be read to narrow the scope of what has already been accepted as a communication.

{¶31} Because I would conclude that Summa failed to meet its burden to demonstrate that the information at issue was a communication as defined by the statute, it likewise did not demonstrate the information was privileged. Thus, on appeal, Summa has not shown that the trial court erred in granting the motion to compel.

APPEARANCES:

MICHAEL J. RUTTINGER, S. PETER VOUDOURIS, SUSAN M. AUDEY, JULIE A. CALLSEN, ELISABETH C. ARKO, and C. ASHLEY SAFERIGHT, Attorneys at Law, for Appellants.

LEE E. PLAKAS, MEGAN J. FRANTZ OLDHAM, and MARIA C. KLUTINOTY EDWARDS, Attoreys at Law, for Appellee.